Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| RICARDO SANTIAGO RODRÍGUEZ Y ANNA MABELLE RIVERA<br><br>Parte Apelada<br><br>v.<br><br>FAJARDO FORD Y OTROS<br><br>Parte Apelante | TA2025AP00212 | *APELACIÓN*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Sobre:<br>DAÑOS Y PERJUICIOS<br><br>Caso núm.:<br>CA2018CV02209 |

Panel integrado por su presidenta, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno[1]

Robles Adorno, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 31 de octubre de 2025.

El 6 de agosto de 2025, Fajardo Ford, Inc. (Fajardo Ford o la parte apelante) presentó ante nos un recurso de *Apelación* en el que solicitó que revoquemos la *Sentencia Parcial* emitida y notificada el 7 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI o foro primario)[2].

En el aludido dictamen, luego de evaluar las mociones presentadas por las partes, el TPI resolvió que no procedía la *Moción de Sentencia Sumaria* presentada por Fajardo Ford y, por tanto, le adjudicó responsabilidad estricta a Fajardo Ford por los defectos del vehículo.[3] Sin embargo, determinó negligencia comparada por los daños del señor Ricardo Santiago Rodríguez (el señor Santiago Rodríguez) y ordenó la celebración de una vista evidenciaria para atender la valoración de los daños para compensar al señor Santiago

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución del Jueza Rivera Marchand.
[2] Entrada Núm. 109 del caso CA2018CV02209 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] Entrada Núm. 102 del caso CA2018CV02209 en el SUMAC.

Rodríguez y a la señora Anna Mabelle Rivera (la señora Rivera) (en conjunto, la parte apelada).

Por los fundamentos que expondremos a continuación, revocamos la *Sentencia Parcial* recurrida.

## I.

El caso de epígrafe tiene su inicio el 5 de septiembre de 2018, cuando la parte apelada instó una *Demanda* en la que alegó que el 8 de septiembre de 2017, el señor Santiago Rodríguez sufrió daños en su pierna izquierda a causa de unos desperfectos mecánicos del vehículo Ford Taurus 2015.[4] Como consecuencia del accidente, el señor Santiago Rodríguez sufrió daños físicos y emocionales y, como resultado de estos, requirió tratamiento médico. Ante ello, argumentó que, Fajardo Ford, era el responsable por los daños que sufrió el señor Santiago Rodríguez por no brindar el mantenimiento adecuado al referido vehículo. En esa línea, arguyó que Fajardo Ford no le avisó a la policía de Puerto Rico sobre el defecto de transmisión de los vehículos Ford Taurus del 2015. Ello, tras el vehículo en controversia rodar por el pavimento involuntariamente, debido a que no detectó la posición de "*parking*". Consecuentemente, ante este cuadro, el señor Santiago Rodríguez solicitó una suma de $300,000.00 en concepto de daños físicos, daños emocionales y angustias mentales. Asimismo, suplicó el monto de $5,000.00 en relación con la pérdida de salario. Por otro lado, la señora Rivera solicitó la cuantía de $100,000.00 en concepto de daños emocionales y angustias mentales.

El 7 de diciembre de 2018, Fajardo Ford, radicó una *Contestación a Demanda* en la que negó ser el responsable de los daños sufridos por la parte apelada, toda vez que no es el fabricante del vehículo y, por ende, no respondía por los defectos mecánicos

---

[4] Entrada Núm. 1 del caso CA2018CV02209 en el SUMAC.

del automóvil.[5] Resaltó que, durante el tiempo en el que Fajardo Ford atendió las solicitudes de servicio del vehículo en cuestión, no hubo un *"recall"* o campaña para reparación de transmisión por defectos del fabricante. Por tanto, expuso que la demanda de epígrafe no aduce una causa de acción que amerite la concesión de un remedio. Argumentó, en la alternativa, que el accidente se debió a la negligencia de la propia parte apelada. En consecuencia, el TPI debía desestimar la *Demanda* instada en su contra con la imposición de costas, gastos y honorarios de abogado.

Tras varios trámites procesales, el 7 de marzo de 2024, las partes presentaron un *Informe de Conferencia con Antelación a Juicio*[6] en el que estipularon lo siguientes hechos, documentos y asuntos incontrovertidos:

1. Los demandantes son mayores de edad, y mantienen una relación de convivencia con dirección en Bo. Quebrada Negrito, Calle C, Sector. Las Pozas Carretera. 181 KM 10 Trujillo Alto P.R.
2. Residen en su hogar: Anna G. Santiago Díaz (menor de edad) y José G. Díaz Díaz (menor de edad).
3. El viernes, 8 de septiembre de 2017, Ricardo Santiago Rodríguez tuvo un accidente en el Cuartel de la Policía de Puerto Rico Precinto Sur de Trujillo Alto.
4. Para la fecha del accidente el Sr. Santiago se desempeñaba en el Negociado de la Policía de Puerto Rico con un rango de Sargento.
5. Para la fecha del accidente el señor Santiago tenía 43 años de edad.
6. El accidente fue con un vehículo – patrulla de la policía – Ford Police Interceptor (Taurus) del 2015 con tablilla GE-07161, motor 3.5 litros turbo AWD, con VIN Number 1FAHP2MT2FG169148.
7. El vehículo fue llevado a Fajardo Ford en ocho (8) ocasiones entre [el] periodo del 6 de mayo de 2016 y el 29 de marzo de 2017.
8. Debido al accidente del 8 de septiembre de 2017 el señor Santiago fue llevado a la Sala de Emergencia del CDT de Trujillo Alto.
9. El 11 de septiembre de 2017 el señor Santiago se reportó al Fondo del Seguro del Estado en donde recibió tratamiento médico.

**Documentos**

1. Autenticidad más no el contenido de las fotos y videos relacionados al accidente.

---

[5] Entrada Núm. 9 del caso CA2018CV02209 en el SUMAC.
[6] Entrada Núm. 87 del caso CA2018CV02209 en el SUMAC.

2. Autenticidad del expediente médico del Hospital de la Corporación del Fondo del Seguro del Estado.
3. Autenticidad del expediente médico del Programa de Ayuda al Empleado custodiado por la Policía de Puerto Rico.
4. Autenticidad de Informe de Incidente de la Policía de Puerto Rico.
5. Autenticidad de Factura (Invoice) 114012 emitida por Fajardo Ford para trabajos realizados sobre el vehículo con tablilla GE07161 el 6 de mayo de 2016. (2 páginas)
6. Autenticidad de Factura (Invoice) 114166 emitida por Fajardo Ford para trabajos realizados sobre el vehículo con tablilla GE07161 el 16 de mayo de 2016. (1 página)
7. Autenticidad de Factura (Invoice) 114504 emitida por Fajardo Ford para trabajos realizados sobre el vehículo con tablilla GE07161 el 8 de junio de 2016. (1 página)
8. Autenticidad de Factura (Invoice) 114531 emitida por Fajardo Ford para trabajos realizados sobre el vehículo con tablilla GE07161 el 9 de junio de 2016. (1 página)
9. Autenticidad de Factura (Invoice) 115025 emitida por Fajardo Ford para trabajos realizados sobre el vehículo con tablilla GE07161 el 18 de julio de 2016. (2 páginas)
10. Autenticidad de Factura (Invoice) 115876 emitida por Fajardo Ford para trabajos realizados sobre el vehículo con tablilla GE07161 el 15 de septiembre de 2016. (2 páginas)
11. Autenticidad de Factura (Invoice) 117106 emitida por Fajardo Ford para trabajos realizados sobre el vehículo con tablilla GE07161 el 15 de diciembre de 2016. (1 página)
12. Autenticidad de Factura (Invoice) 118643 emitida por Fajardo Ford para trabajos realizados sobre el vehículo con tablilla GE07161 el 29 de marzo de 2017. (2 páginas)
13. Autenticidad de documento titulado OASIS Report, el cual representa el Historial del Vehículo con VIN Number 1FAHP2MT2FG169148. (1 página)
14. Autenticidad de documento titulado "Warranty History" del vehículo con VIN Number 1FAHP2MT2FG169148. (2 páginas).

Por otro lado, expusieron los siguientes hechos, documentos y asuntos donde existe controversia:

**Parte demandante**
1. La negligencia de los demandados.
2. La relación causal entre los hechos y los daños.
3. Los daños sufridos por los demandantes y su cuantía y valor.

**Parte demandada**
1. Si Fajardo Ford incurrió en negligencia u omisión alguna en el trabajo automotriz ofrecido al vehículo con VIN Number 1FAHP2MT2FG169148 en las ocasiones que los llevaron al dealer y que fuese la causa próxima y eficiente del accidente.

2. Si el fabricante emitió "recall" o Boletín de servicio relacionado a algún problema con el sistema de parqueo de la transmisión o alguna falla que indique que el vehículo puede zafarse de "park" para esta unidad o modelo en específico, para el vehículo Ford Police Interceptor (Taurus) del 2015, motor 3.5 litros turbo AWD, con VIN Number 1FAHP2MT2FG169148.

3. Si el accidente se debió a un defecto de fábrica.

4. Si Ricardo Santiago Rodríguez incurrió en negligencia u omisión alguna en el manejo del vehículo que fuese la causa próxima y eficiente del accidente.

5. Si terceras personas, incluyendo empleados de la Policía de Puerto Rico o contratistas de ésta, incurrieron en negligencia u omisión al no brindar el mantenimiento pertinente y necesario al vehículo Ford Police Interceptor (Taurus) del 2015, motor 3.5 litros turbo AWD, con VIN Number 1FAHP2MT2FG169148.

6. Determinar el grado de la negligencia del señor Santiago Rodríguez.

7. Relación causal entre los daños reclamados, la alegada negligencia de Fajardo Ford y el accidente del señor Santiago Rodríguez.

8. Determinar la extensión y cuantía de los daños relacionados al accidente y a la negligencia u omisión de Fajardo Ford, si alguna.

En dicho *Informe*, las partes enumeraron los testigos y peritos que testificarían en el juicio. Particularmente, la parte apelante informó que, uno de sus testigos era el señor Ernesto Ayala, gerente de servicios de Fajardo Ford. Sostuvo que, el testimonio del señor Ernesto Ayala versaría sobre el hecho de que el fabricante no había notificado un Boletín de servicio o "*recall*" para el modelo del vehículo en controversia, el Ford Police Interceptor (Taurus) del 2015. Además, señaló que el testigo testificaría sobre los servicios ofrecidos a la parte apelada, conforme a las facturas, y el historial del vehículo, según surge en los documentos titulados "*OASIS Report*" y "*Warranty History*". Ello, con el fin de probar que Fajardo Ford no era responsable de los daños alegados.

Luego de varias mociones presentadas, el 26 de junio de 2024, el TPI emitió una *Minuta* en la que transcribió las siguientes disposiciones discutidas en la Conferencia con Antelación a Juicio:

• Se añadió en el informe de conferencia con antelación a juicio como identificación 1 de la parte demandada el curriculum vitae del perito Omar Badillo.

- Se acogen las estipulaciones de la 1 a la 9 de la página 12 del informe.
- Se marcará como Exhibit 1 por estipulación en bloque las fotos y el video.
- No se dará por estipulado el informe de incidente de la policía, por el momento, si es auténtico y pertinente entra, se dará el valor probatorio y exhortó a los abogados a volver a examinar e igualmente revisar las facturas.
- Se concedió el término de 45 días a la parte demandante para suplementar el derecho aplicable a los efectos de la valoración de los daños según el caso de Santiago vs Fresenius y enviará oferta transaccional. Transcurridos dicho término tendrá igual término la parte demandada para fundamentar el por qué no se deba considerar esas valoraciones y tendrá 20 días para informar sobre la transacción. Se aceptará sentencias del Tribunal de Apelaciones para fines ilustrativos y deberá sustentar el 50% de negligencia del agente.
- Se incitó al licenciado Lo Presti Torres a examinar el ámbito del testimonio de cada uno de los testigos.
- Presentarán moción conjunta sobre la posibilidad de transacción y se exhortó a cumplir con los términos previamente establecidos.
- No se aceptará ningún otro testigo.
- Se cualificó al Dr. López Reymundí como perito ortopeda y al Dr. Cándido Martínez como perito fisiatra.
- Ambos abogados se reservan el derecho de hacer *boadier* con relación al Sr. López Cardec y al Sr. Badillo Maisonave.
- Se aprobó el informe de conferencia con antelación a juicio y será la guía que regirá los procedimientos del juicio.
- Se pautó vista transaccional a atenderse presencialmente para el 9 de diciembre de 2024 a las 2:00 pm y se ordenó la presencia de todas las partes, no pueden estar *on call.*
- Se señaló juicio en su fondo a celebrarse presencialmente para los días 17, 18, 19 y 20 de marzo de 2025 comenzando a las 9:00 am.
- Todos los testigos tienen que comparecer el primer día del juicio para ser juramentados.
- Diez días antes del señalamiento tienen que asegurarse de cargar toda la prueba documental en SUMAC, quedaron apercibidos que prueba que no esté en el expediente electrónico prueba que quedará excluida.[7]

Así las cosas, el 4 de diciembre de 2024, Fajardo Ford radicó una *Moción Informativa* en la cual indicó que el 6 de noviembre de 2024 recibió una oferta transaccional por parte del señor Santiago Rodríguez y la señora Rivera.[8] Sin embargo, alegó que luego de

---

[7] Entrada Núm. 97 del caso CA2018CV02209 en el SUMAC.
[8] Entrada Núm. 98 del caso CA2018CV02209 en el SUMAC.

realizar una evaluación de responsabilidad sobre la forma y manera en que ocurrió el accidente, la negligencia u omisión que se imputó, el descubrimiento de prueba realizado y los informes periciales, razonó que Fajardo Ford no era responsable de los daños causados. Por tanto, rechazó la oferta transaccional cursada por la parte apelada al entender que la parte apelante no responde por los desperfectos del vehículo.

El 16 de enero de 2025, la parte apelante presentó una *Moción de Sentencia Sumaria* en la que rogó la desestimación del pleito bajo el fundamento de que Fajardo Ford, no era el responsable de los desperfectos del vehículo por no existir un "*recall*" o Boletín de servicio, para el modelo Police Interceptor Taurus del 2015 con VIN Number 1FAHP2MT2FG169148, que responsabilice a la parte apelante.[9] En la mencionada moción, Fajardo Ford esgrimió los siguientes hechos que no estaban en controversia:

1. El viernes, 8 de septiembre de 2017, Ricardo Santiago Rodríguez tuvo un accidente en el Cuartel de la Policía de Puerto Rico Precinto Sur de Trujillo Alto.
2. Para la fecha del accidente el Sr. Santiago se desempeñaba en el Negociado de la Policía de Puerto Rico con un rango de Sargento.
3. El accidente fue con un vehículo – patrulla de la policía – Ford Police Interceptor (Taurus) del 2015 con tablilla GE-07161, motor 3.5 litros turbo AWD, con VIN Number 1FAHP2MT2FG169148.
4. El vehículo Police Interceptor Taurus del año 2015 fue comprado el 11 de septiembre de 201526 por la Administración de Servicios Generales y/o la Policía de Puerto Rico en un concesionario o dealer distinto a Fajardo Ford.
5. La primera vez que se llevó la unidad a Fajardo Ford fue el 6 de mayo de 201627, siete meses luego de haber sido adquirida, siendo la última vez en que se llevó la unidad a Fajardo Ford el 29 de marzo de 201728.
6. El vehículo fue llevado a Fajardo Ford en ocho (8) ocasiones entre le periodo del 6 de mayo de 2016 y el 29 de marzo de 2017.
7. La primera ocasión que se llevó a Fajardo Ford el vehículo en cuestión fue el 6 de mayo de 2016 (número de trabajo 114012). La unidad se llevó refiriendo que al girar el guía hacia ambos lados daba un cantazo. Conforme surge de la misma

---

[9] Entrada Núm. 102 del caso CA2018CV02209 en el SUMAC.

factura se encontró que el "Rack and Pinion" estaba dañado y se reemplazó.

8. La segunda ocasión que se llevó a Fajardo Ford el vehículo en cuestión fue el 16 de mayo de 2016 (número de trabajo 114166). La unidad se llevó refiriendo que el "keyless entrey" de la vareta de la puerta delantera izquierda se había despegado. Se pidió la misma, pero no se hizo trabajo alguno en la unidad.

9. La tercera ocasión que se llevó a Fajardo Ford el vehículo en cuestión fue 8 de junio de 2016 (número de trabajo 114504). La unidad se llevó para reemplazar la vareta de la puerta delantera izquierda que se había pedido el 16 de mayo de 2016. No se realizó trabajo adicional.

10. La cuarta ocasión que se llevó a Fajardo Ford el vehículo en cuestión fue el 9 de junio de 2016 (número de trabajo 114531). La unidad se llevó refiriendo que tenía un ruido en el tren delantero al pasar por carretera irregular. Se encontró que los "Link" de la barra estabilizadora frontal estaban dañados y se reemplazaron. Generales y/o la Policía de Puerto Rico en un concesionario o dealer distinto a Fajardo Ford.

11. La quinta ocasión que se llevó a Fajardo Ford el vehículo en cuestión fue el 18 de julio de 2016 (número de trabajo 115025). La unidad se llevó refiriendo que no prendía. Se reemplazó la batería, se realizó prueba de carga y se reemplazó un sensor de las gomas.

12. La sexta ocasión que se llevó a Fajardo Ford el vehículo en cuestión fue el 15 de septiembre de 2016 (número de trabajo 115876). La unidad se llevó refiriendo que daba un cantazo fuerte en la transmisión luego de aplicar la reversa, y que tenía un ruido en el área de la goma trasera derecha y daba un cantazo en el amortiguador. Se encontró que había una caja de bola del eje frontal dañada y se reemplazó. Además, se reemplazó un amortiguador o "shock absorber" de la parte trasera derecha. Así también, se inspeccionó y reemplazó el módulo de control de la bomba de combustible, debido a un "recall" del fabricante. No se encontró desperfecto alguno en la transmisión de la unidad.

13. La séptima ocasión que se llevó a Fajardo Ford el vehículo en cuestión fue el 15 de diciembre de 2016 (número de trabajo 117106). La unidad se llevó indicando que daba un cantazo fuerte al aplicar la reversa y "drive". Se probó la unidad, pero no se presentó la condición descrita.

14. La octava y última ocasión que se llevó a Fajardo Ford el vehículo en cuestión fue el 29 de marzo de 2017 (número de trabajo 118643). La unidad se llevó refiriendo que no prendía y que tenía un "liqueo" de agua en el área del piso del conductor. Se reemplazó la batería y se reemplazó el evaporador del aire acondicionado lo cual causaba el "liqueo" de agua.

15. Entre la fecha del 29 de marzo de 2017 y el 8 de septiembre de 2017, fecha en que ocurre el accidente, el vehículo en cuestión no fue llevado a

Fajardo Ford para evaluación y/o servicio de reparación.

Con ello, argumentó que, el hecho de que Fajardo Ford trabajó el vehículo durante un periodo de tiempo, no lo hace responsable del accidente sufrido por el señor Santiago Rodríguez. En consecuencia, se debía desestimar el pleito sumariamente, a favor de Fajardo Ford, en ausencia de controversia real sobre los hechos materiales y dado la inexistencia de prueba que demuestre negligencia u omisión.

El 4 de febrero de 2025, la parte apelada radicó una *Oposición a Sentencia Sumaria* en la que alegó que la desestimación no podía extenderse a Fajardo Ford en virtud de que la prueba desfilada demostró que la parte apelante incumplió con su deber de brindar mantenimiento adecuado.[10] Además, adujo que, Fajardo Ford incumplió con el Boletín número 15C07, emitido por el fabricante Ford Motor Co., el cual ordenaba a los distribuidores de automóviles a realizar pruebas y corregir el defecto en controversia para evitar riesgos de accidentes. Reiteró que, el accidente del señor Santiago Rodríguez fue producto de la negligencia de Fajardo Ford. Sin embargo, al no existir hechos materiales en controversia, se debía declarar no ha lugar la moción de sentencia sumaria a favor de la parte apelante y subsiguientemente, dictar sentencia sumaria a favor de la parte apelada.

El 7 de julio de 2025, el foro primario emitió una *Sentencia Parcial* en la que resolvió que no procedía la desestimación del pleito a favor de Fajardo Ford.[11] En cambio, determinó que procedía imputarle negligencia a la parte apelante con relación a la falta de diligencia para reparar el defecto del vehículo, según impuesto en el Boletín número 15C07. Por su parte, adjudicó negligencia comparada al señor Santiago Rodríguez por tener la pierna fuera del

---

[10] Entrada Núm. 104 del caso CA2018CV02209 en el SUMAC.
[11] Entrada Núm. 109 del caso CA2018CV02209 en el SUMAC.

vehículo cuando este comenzó su marcha. Además, ordenó la celebración de vista evidenciaria a los fines de discutir la valoración de los daños.

Así las cosas, el 13 de agosto de 2025, el TPI emitió una *Orden* en la que suspendió el juicio en su fondo, pautado para 25 al 28 de agosto de 2025.[12] Ello, mientras se atendía el recurso ante nuestra consideración.

Inconforme con el dictamen, el 6 de agosto de 2025, la parte apelante compareció ante nos, mediante un recurso de Apelación en el que formuló los siguientes señalamientos de error:

> Primer error: Erró el TPI al determinar que la campaña o "recall" bajo el Boletín 15C07 aplica al vehículo Police Interceptor Taurus objeto del accidente.
>
> Segundo error: Erró el TPI al imponerle responsabilidad estricta a Fajardo Ford bajo el fundamento que el vehículo Police Interceptor Taurus conducido por el demandante tenía un desperfecto, el cual fue la causa próxima o eficiente del accidente.
>
> Tercer error: Erró el TPI al no desestimar la causa de acción en contra de Fajardo Ford ya que la parte demandante carece de prueba que demuestre que estos incurrieron en negligencia u omisión al llevar a cabo trabajos de reparación en el vehículo en cuestión que fuese la causa próxima o eficiente del accidente.

En atención a nuestra *Resolución,* el 8 de septiembre de 2025, la parte apelada presentó una *Oposición a escrito de apelación.*

Con el beneficio de la comparecencia de las partes, procederemos a resolver el caso de epígrafe.

## II.

### A.

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un

---

[12] Entrada Núm. 112 del caso CA2018CV02209 en el SUMAC.

juicio plenario. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___(2025). *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). El mecanismo de sentencia sumaria procede en los casos en los que no exista controversia real y sustancial en cuanto a los hechos materiales y reste disponer las controversias de derecho existentes. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___ (2025). *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). La parte que promueve la moción de sentencia sumaria debe establecer con claridad su derecho y demostrar que no existe controversia real en cuanto a algún hecho material. *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137 (2006). En específico, la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1, establece lo siguiente:

> Una parte contra la cual se haya formulado una reclamación podrá presentar, a partir de la fecha en que fue emplazado pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

No obstante, cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria. *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010). Con ello, la duda debe ser de tal naturaleza que permita "concluir que existe una *controversia real y sustancial* sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión, supra*, pág. 214.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia real en cuanto

a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015). El oponente, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___ (2025). *SLG Zapata-Rivera v. JF Montalvo, supra*, pág. 213.; *Ramos Pérez v. Univisión, supra*, pág. 215; *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007).

Entretanto, la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida. Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3(a) de Procedimiento Civil, *supra*, R. 36.3(a), dispone que tendrá que desglosar lo siguiente:

> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
> (6) el remedio que debe ser concedido.

La Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b) prescribe que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte

promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.

Así pues, a Regla 36.3(c) de Procedimiento Civil, *supra*, R. 36.3(c) añade que, cuando se presente una moción solicitando sentencia sumaria y se sostenga conforme a la Regla 36, *supra*, la parte promovida no podrá descansar en las aseveraciones contenidas en sus alegaciones. Por el contrario, estará obligada a contestar detallada y específicamente como lo haya hecho la parte promovente de la moción. De no hacerlo, la citada regla prescribe que se dictará la sentencia sumaria en su contra, si procede. Sin embargo, el no presentarse oposición a una moción de sentencia sumaria no impide que el tribunal falle en contra del promovente de esta. Ya que esta "puede dictarse a favor o en contra del promovente, según proceda en derecho.". *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 575 (1997).

En esa línea, la Regla 36.5, *supra*, R. 36.5 establece que las declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal de la persona declarante y que contendrán los hechos que serían admisibles en evidencia y demostrarán afirmativamente que la persona declarante está cualificada para testificar en cuanto a su contenido. Asimismo, prescribe que "[c]opias juradas o certificadas de todos los documentos, o de partes de éstos en que se haga referencia en una declaración jurada, deberán unirse a la declaración o notificarse junto con ésta". *Íd.*

Por otro lado, la Regla 36.6, *supra*, instituye el mecanismo a seguir cuando no puedan obtenerse declaraciones juradas. Al respecto, estatuye que, si las declaraciones juradas de la parte que se oponga a la moción resultan que no pueden presentar mediante

declaraciones juradas hechos esenciales para justificar su oposición, entonces el tribunal podrá denegar la solicitud de sentencia sumaria o posponer su consideración. De posponer la consideración, el foro primario podrá dictar cualquier orden que entienda justa y le concederá a la parte promovida un término razonable para obtener declaraciones juradas, tomar deposiciones o conseguir que la parte contraria le facilite cierta evidencia.

Sin embargo, los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no procede como cuestión de Derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

Conforme con esos principios, en *Meléndez González et al. v. M. Cuebas*, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. *Íd.*, pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. *Íd.* Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. *Íd.*

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra.* Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. *Íd.*

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. *Íd.*, pág. 119.

**B.**

En Puerto Rico rige la norma de la responsabilidad estricta o absoluta del fabricante o vendedor por los daños causados por productos defectuosos. *Rivera et al. v. Superior Pkg., Inc., et al.,* 132 DPR 115, 125 (1992); *Mendoza v. Cervecería Corona, Inc.,* 97 DPR 499, 512 (1969). La norma ha sido adoptada con el fin de evitar resultados injustos que puedan repercutir de la aplicación de la doctrina general de daños. *Gonzalez Caban v. JR Seafood,* 199 DPR 234, 240 (2017). La doctrina establece que, todo fabricante o manufacturero que introduce un producto en el mercado, tiene una responsabilidad absoluta de responder por los daños que cause el mismo al consumidor, siempre y cuando los daños sean atribuibles a un defecto del producto. *Mendoza v. Cervecería Corona, Inc.,* supra.

Anteriormente, nuestro ordenamiento jurídico ha reconocido que un producto defectuoso es "aquel que falla en igualar la calidad promedio de productos similares". *Gonzalez Caban v. JR Seafood,* supra; *Rodríguez Méndez v. Laser Eye Surgery Management of Puerto Rico, Inc., et. al.*, 195 DPR 769 (2016); *Montero Saldaña v. Amer. Motors Corp.,* 107 DPR 452, 462 (1978); *Mendoza v. Cervecería Corona, Inc.,* supra.

Al amparo de esta doctrina la persona que reclama daños tiene que demostrar que el producto era defectuoso y que el defecto le ocasionó un daño. *Aponte v. Sears Roebuck de P.R.,* 144 DPR 830, 839 (1998). Sin embargo, el perjudicado no tiene que probar la negligencia del fabricante, ni del vendedor, sino que el producto era defectuoso. *Mendoza v. Cervecería Corona,* supra, págs. 511-512.

Conforme a la doctrina de la responsabilidad absoluta del fabricante o vendedor, todos los que intervienen en la cadena de fabricación y distribución responden solidariamente con el fabricante ante el perjudicado. A su vez, la doctrina de responsabilidad absoluta del fabricante incluye los defectos de fabricación, diseño e insuficiencia en las advertencias o instrucciones del producto. *Aponte v. Sears Roebuck de P.R., Inc.,* supra, págs. 839-840.

Se ha reconocido que tal norma jurídica no se limita al manufacturero del producto, sino que ha sido extensiva a todos los que intervienen en la cadena de fabricación y distribución. Por tanto, todos responden solidariamente con el fabricante ante el perjudicado. *Rodríguez Méndez v. Laser Eye Surgery Management of Puerto Rico, Inc., et. al.*, supra; *Montero Saldaña v. American Motors, Corp.*, supra.

Para entablar una acción de responsabilidad estricta por productos defectuosos, un demandante debe demostrar: (1) la existencia de un defecto en el producto, ya sea de fabricación, de

diseño, por la insuficiencia de advertencias o instrucciones; (2) el defecto existía cuando el producto salió del control del demandado; (3) el demandado debe estar en el negocio de vender o distribuir el producto; (4) el defecto es la causa adecuada de los daños del demandante; y (5) el producto fue utilizado para un uso razonable y de manera previsible por el demandado. *Rodríguez Méndez v. Laser Eye Surgery Management of Puerto Rico, Inc., et. al.*, supra, págs. 780-781; *González Cabán v. JR Seafood*, supra, pág. 257.

### III.

En el primer señalamiento de error, la parte apelante alegó que el TPI erró al concluir que el Boletín 15C07 aplica al vehículo Police Interceptor Taurus objeto del accidente. Con respecto al segundo señalamiento de error, Fajardo Ford arguyó que el foro primario erró al imponerle responsabilidad estricta a Fajardo Ford bajo el fundamento que el vehículo Police Interceptor Taurus conducido por el demandante tenía un desperfecto, el cual fue la causa próxima del accidente. En cuanto al último señalamiento, indicó que el TPI erró al no desestimar la causa de acción en contra de Fajardo Ford. Ello, tras la parte apelada carecer de prueba que evidenciara la negligencia u omisión de la parte apelante por llevar a cabo unos trabajos de reparación en el vehículo, lo que resultó en la causa próxima o eficiente del accidente.

Por estar estrictamente relacionados, procedemos a resolver los errores conjuntamente.

Antes de entrar a revisar los errores, conforme las normas jurídicas pormenorizadas, nos encontramos en la misma posición que el TPI en revisar una solicitud de sentencia sumaria. En primer lugar, nos corresponde evaluar si las partes cumplieron con los requisitos de forma exigidos por la Regla 36.3 de Procedimiento Civil, *supra,* respecto a la moción de sentencia sumaria, así como su oposición.

Luego de evaluar la *Moción de sentencia sumaria,* concluimos que esta cumplió parcialmente con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3, toda vez que no añadió una exposición breve de las alegaciones de las partes y no respaldó con evidencia el enunciado dieciséis (16) con relación a los hechos materiales incontrovertidos.

Por otra parte, en la *Oposición a sentencia sumaria* la parte apelada no cumplió con los requisitos de forma dispuestos en la citada regla. Ello, pues la parte apelante no incluyó una exposición breve de las alegaciones de las partes, no enumeró los hechos incontrovertidos y tampoco incluyó indicación de párrafos o páginas de las declaraciones juradas u otra prueba admisible en evidencia.

Ahora bien, como es sabido, este incumplimiento no implica la denegación automática de la sentencia sumaria peticionada y su oposición, pues recaería en la sana discreción del foro juzgador acoger la misma si determina que no existen hechos medulares en controversia que impidan dictar sentencia sumaria.

Así pues, nos corresponde determinar si existen hechos en controversia que imposibilitan la disposición sumaria del caso. Revisados los documentos sometidos por las partes en apoyo u oposición de la resolución sumaria, juzgamos que los mismos establecen que en la causa de epígrafe no hay controversia sobre los hechos medulares. Por tanto, no había impedimento alguno en derecho para dictar sentencia sumaria. Así establecido, nos corresponde revisar *de novo* si el TPI aplicó correctamente el derecho aplicable al caso de autos.

Al atender la solicitud de sentencia sumaria de la apelante, así como la correspondiente oposición que la parte apelada sometió frente a esta, el foro primario concluyó que no existía controversia en cuanto a los siguientes hechos:

1. El 5 de septiembre de 2017, el señor Ricardo Santiago Rodríguez, quien es agente de la Policía de Puerto Rico, como parte del Plan de Emergencias por el paso del Huracán Irma, fue asignado como refuerzo al Cuartel de Trujillo Alto Sur.

2. El 8 de septiembre de 2017, el agente Santiago comenzó su jornada de trabajo a las 6:00 de la tarde. Para efectuar las funciones de patrullaje se une el agente Rosado, se les asignó el vehículo de motor marca Ford Modelo Police Interceptor Taurus, del año 2015, tablilla GE-7161, motor 3.5 litros turbo AWD, con número de VIN 1FAHP2MT2FG169148, en adelante "Police Interceptor Taurus".

3. Durante la ronda, fueron a la panadería La Ruca en Trujillo Alto a comprar unos cafés y regresaron al Precinto, para llevarle el café a la compañera que estaba en el retén, para ese momento Santiago conducía el vehículo, el agente Rosado estaba de pasajero.

4. El agente Santiago estacionó el vehículo a la entrada del Cuartel.

5. El agente Rosado se bajó del vehículo y se dirige a llevar el café al área del retén, posteriormente regresa y se coloca al frente de la patrulla, se recuesta de la parte frontal, a tomarse el café.

6. Mientras tanto, el demandante agente Santiago, permaneció dentro de la patrulla, trabajando con una querella del Departamento de la Familia, el cual estaba encendido, al igual que el acondicionador de aire y en "parking".

7. En un momento dado el retén llama al agente Rosado para que atendiera una llamada del Departamento de la Familia, por lo cual éste se dirigió nuevamente al área del retén.

8. En ese momento el agente Santiago se bajó del vehículo que estaba encendido y en "parking" para buscar una libreta en el asiento trasero. Que una vez recoge la libreta nuevamente se sienta en el asiento del conductor con la pierna izquierda fuera del vehículo, mueve la palanca de cambios para estar seguro de que estaba en "parking" y saca la llave de la ignición.

9. El vehículo patrulla, "Police Interceptor Taurus", comenzó a rodar apagado cuesta abajo por la inclinación de la calle, y no obstante los intentos infructuosos del demandante, la patrulla impacta el encintado del jardín y la extremidad inferior izquierda del demandante quedó pillada con el encintado.

10. A consecuencia de las heridas recibidas el agente Santiago fue llevado a Sala de Emergencia del CDT de Trujillo Alto.

11. El Police Interceptor Taurus, fue comprado el 11 de septiembre de 2015, por la Administración de Servicios Generales y/o la Policía de Puerto Rico.

12. El vehículo fue llevado a las instalaciones del demandado Fajardo Ford, en ocho (8)

ocasiones distintas, a partir de la fecha de compra.

13.     La primera vez que se llevó la unidad fue el 6 de mayo de 2016, siete meses luego de haber sido adquirida, siendo la última vez en que se llevó la unidad a Fajardo Ford el 29 de marzo de 2017.

14.     El vehículo que conducía el demandante Santiago, marca Ford Modelo Police Interceptor Taurus, del año 2015, tablilla GE-7161, motor 3.5 litros turbo AWD, con número de VIN 1FAHP2MT2FG169148, partir del 21 de julio de 2015, fue objeto de "Recall" o campaña invocada y llamada voluntariamente por el fabricante Ford Motor Company, para corregir defectos en el mecanismo del freno de pie o del pedal.

15.     El propio equipo de ingenieros y técnicos de Ford identificaron y reconocieron el defecto sin la intervención del gobierno.

16.     El día 21 de julio de 2015, el fabricante Ford Motor Company, voluntariamente y sin la intervención o requerimiento del gobierno, emitió la Campaña o "Recall" 15C07, para varios vehículos dentro de los cuales se encontraba el Police Interceptor Ford Taurus 2015:

"Compliance Recall 15C07 Certain 2015 Taurus, Police Interceptor Sedan, MKS, Flex, and MKT Vehicles, 2015- 2016 Explorer Vehicles, and 2016 Police Interceptor Utility Vehicles Parking Brake Control Inspection and Repair.

17.     La Campaña o "Recall" 15C07 iniciada por el propio fabricante Ford Motor Company, afirma concluyentemente:

1. The parking brake may not fully engage when applied, which could result in unintended vehicle movement."
2. OVERVIEW In some of the affected vehicles, the parking brake control may not engage properly. During normal operation, the parking brake control foot pedal should stay down in a locked position when engaged to any detent. If the parking brake control fails to fully engage to the fifth detent, it may not hold the vehicle stationary. A nonfunctional parking brake could result in unintended vehicle movement.
3. Dealers should repair any affected vehicles that arrive at their dealerships, whether or not the customer has received a letter. Inspect Parking Brake Control - ALL 15C07A Replace Parking Brake Control (includes inspection) Taurus Police Interceptor Sedan."

18.     Desde el 2015, año de fabricación del vehículo, hasta la fecha del accidente 8 de septiembre de 2017, el demandado Fajardo Ford incumplió con sus obligaciones como mandata Ford Motor Co. en su Recall por defecto de fabrica del vehículo.

19.          19. El vehículo fue construido en mayo de 2015, por lo que le aplicaba el "Recall."

Coincidimos con el foro primario en cuanto a la ausencia de controversia sobre la mayoría de estos hechos; excepto, los hechos

**AFFECTED VEHICLES**

| Vehicles | Model Year | Assembly Plant | Build Dates |
|---|---|---|---|
| Taurus | 2015 | Chicago | 04-May-2015 through 23-May-2015 |
| Police Interceptor Sedan | | | 04-May-2015 through 22-May-2015 |
| MKS | | | 04-May-2015 through 23-May-2015 |
| Flex | | Oakville | 04-May-2015 through 23-May-2015 |
| MKT | | | 04-May-2015 through 21-May-2015 |
| Explorer | 2015-2016 | Chicago | 04-May-2015 through 23-May-2015 |
| Police Interceptor Utility | 2016 | | 06-May-2015 through 22-May-2015 |

incontrovertidos número 14, 18 y 19, ya que las conclusiones allí alcanzadas por el tribunal no se sustentan con el expediente judicial. Es correcto, y así surge del legajo apelativo, que el Boletín 15C07, emitido por el fabricante Ford Motor Company, mandató a todos los vendedores de automóviles marca Ford a corregir el defecto del sistema de "*parking*" de ciertos vehículos. Conforme al mencionado documento los vehículos afectados fueron los siguientes:[13]

**Nótese que los vehículos marca Police Interceptor Sedan- como el de controversia- incluidos en el Boletín 15C07 son aquellos fabricados desde el 4 de mayo de 2015 hasta el 22 de mayo del mimo año.** Asimismo, es importante advertir que el Boletín 15C07 establece que la identificación de los vehículos afectados debe ser corroborada a tenor con el documento titulado OASIS.[14]

Entre los documentos que la parte apelante incluyó en apoyo de su solicitud de sentencia sumaria, se encuentra el reporte de OASIS para el vehículo Ford Taurus con número de identificación 1FAHP2MT2FG169148.[15] Según allí consta, el **vehículo Taurus**

---

[13] Entrada Núm. 104, Anejo 1 del caso CA2018CV02209 en el SUMAC.

[14] *Íd.*, página 3.

[15] El número de identificación no está en controversia. Por el contrario, fue corroborado por el apelado a través del Anejo 2 que incluyó con su *Moción de Oposición a Sentencia Sumaria*, Entrada Núm. 102 del caso CA2018CV02209 en el SUMAC.

**objeto de la controversia ante nuestra consideración fue construido el 25 de mayo de 2015**. Por consiguiente, no es correcto, como determinó el foro primario, que fue objeto de recall o campaña invocada. En consecuencia, ante este hecho, Fajardo Ford no tenía obligación alguna en cuanto al *Recall* y al vehículo que el apelado conducía, tal como dijo en la determinación 18. No tenía la obligación Esto así, pues contrario a lo que estableció en su determinación de hechos número 19, a dicho vehículo no le aplica el *Recall*.

A la luz de lo anterior, resolvemos que el foro primario erró al dictar la *Sentencia Sumaria Parcial* y establecer que Ford era responsable por los daños que sufrió el apelado. En su lugar, revocamos la determinación apelada y, consecuentemente, ante la ausencia de controversias alguna en cuanto a que el vehículo en controversia no estaba incluido en el Boletin 15C07, desestimamos la Demanda sometida por el apelado contra Ford.

**IV.**

Por los fundamentos que anteceden, se revoca la *Sentencia Parcial* apelada.   Por consiguiente, se desestima la demanda presentada contra Fajardo Ford.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Boria Vizcarrondo concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones